# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DODA LUCAJ,

        Plaintiff,

                              Case No. 14-12635
v.                         HON. TERRENCE G. BERG

UNITED STATES FEDERAL BUREAU OF
INVESTIGATION,

and

UNITED STATES DEPARTMENT OF
JUSTICE

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 17)

On July 3, 2014, Plaintiff filed this Freedom of Information Act ("FOIA") lawsuit alleging that Defendants have failed to comply with their disclosure requirements. (Dkt. 1). Defendants Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") contend that they have fulfilled their obligations and that they are entitled to a grant of summary judgment. (Dkt. 17). For the reasons explained below, Defendants' motion for summary judgment **IS GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Doda Lucaj is a naturalized United States citizen; he is originally from Albania. (Dkt. 1, p. 2-3). On December 7, 2006, Plaintiff was arrested in

Vienna, Austria as a result of criminal charges against him in Montenegro.[1] (*Id.* at 3). In December 2007, FBI agents interrogated Plaintiff. (*Id.*) Subsequently, Austria extradited Plaintiff to Montenegro. (*Id.*) Montenegro prosecuted Plaintiff and imprisoned him from 2007 until 2011. (Dkt. 23, p. 3).

Seeking to determine the basis for his arrest and criminal conviction, Plaintiff, through his counsel, filed a FOIA suit on May 11, 2012. (Dkt. 1, Ex. A). Plaintiff requested:

> 1. Any and all information relating to any investigation, arrest, detention, and/or interrogation of Mr. Lucaj referenced above.
>
> 2. Any and all documents relating to the same, including any and all FD-302s.
>
> 3. The identities of any agents who participated and/or witnesses any interview or interrogation of Mr. Lucaj, including, but not limited to, FBI Agents, Immigration and Customs Enforcement Agents and anybody else working on this.

(*Id.*) On August 30, 2012, the FBI responded to Plaintiff's counsel and indicated that it had found approximately 1,922 responsive documents. (Dkt. 1, p. 4). The FBI subsequently determined that only 1,423 pages of the 1,922 documents were responsive. (Dkt. 17, p. 10).

In February or March 2014, while Plaintiff's FOIA suit was underway, Plaintiff attempted to travel within the United States but the airline carrier refused to issue him a ticket for undisclosed reasons. (Dkt. 1, p. 5). Plaintiff, therefore,

---

[1] Mr. Lucaj was initially charged by the Montenegran government with conspiracy to commit acts of terrorism. (Dkt. 23, p. 4). He was ultimately convicted of "conspiracy against the constitution and planning acts against the security of Montenegro[.]" *Id.* He was sentenced to six and a half years in prison and served nearly five years. (*Id.*)

believes that the government has placed him on its "No-Fly" list[2] as a result of his conviction in Montenegro.

On January 15, 2015, the FBI informed Plaintiff that it had reviewed Bates stamped pages 1-456 and released 361 pages in full or in part. (Dkt. 17, p. 4). On January 29, 2015, the FBI reviewed the second batch of documents covering Bates pages 457-1423, and released 106 pages in full or in part. (*Id.* pp. 4-5).

On August 18, 2015, Defendants moved for summary judgment. (Dkt. 17). In his response, Plaintiff only objects to Defendants' withholding of 16 pages.[3] (Dkt. 23). These 16 pages consist of two documents compiled by DOJ attorneys.[4] The first document, Bates pages 192-99, is a request for assistance from the United States Office of International Affairs ("OIA") to the Central Authority of Austria. (Brodfuehrer Decl., Dkt. 17, Ex. 4, p. 4). OIA made the request on January 31, 2007 pursuant to the Mutual Legal Assistance Treaty ("MLAT") between the United States and Austria. (*Id.*) According to Defendants, the document contains "factual information possessed by DOJ at the time the MLAT request was executed, as well

---

[2] "The No-fly list is a list of individuals who are prohibited from boarding an aircraft. The Automatic Selectee list is a list of individuals who must undergo additional security screening before being permitted to board an aircraft. Originally created and maintained by the Transportation Security Administration (TSA), No-fly and Selectee lists are now derived from the consolidated terrorist watch list maintained by the Terrorist Screening Center (TSC)." Maureen Cooney, U.S. Department of Homeland Security, *Report on Effects of Privacy & Civil Liberties* (2006), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_rpt_nofly.pdf.

[3] These pages include Bates numbered pages 192-99; 300, and 302-08. (Dkt. 23, p. 14).

[4] Defendants state that both documents were prepared as part of an investigation into whether Plaintiff violated a number of federal statutes, including 18 U.S.C. § 2339A (Providing Material Support to Terrorists), 18 U.S.C. § 960 (Expedition Against a Friendly Nation), and 18 U.S.C. § 956 (Conspiracy to Kill, Kidnap, Maim, or Injure Persons or Damage Property in a Foreign Country). (Dkt. 17, p. 2).

as DOJ's legal theories of the case." (*Id.*) Further, it contains a history of all legal actions taken against Plaintiff, a factual summary, evidence of the DOJ's investigation into Plaintiff, and the statutory basis for Plaintiff's alleged offenses. (*Id.* at pp. 4-5).

The second document, Bates pages 300, 302-08, is a request for assistance prepared by OIA on July 16, 2007 seeking information from a foreign government,[5] as well as requesting permission to interview various individuals. (*Id.* at p. 5). Defendants claim that this request contains facts in the hands of the DOJ at the time of its investigation into Plaintiff, the government attorneys' legal theories of the case, a summary of the facts and evidence, as well as the statutory basis for the alleged criminal activities. (*Id.*).

Plaintiff seeks these documents to understand the reason for his detention in Austria, his incarceration in Montenegro, as well as for the assistance they might provide "in opposing his apparent placement on a no-fly list." (Dkt. 23, p. 12).

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might

---

[5] Defendant FBI does not disclose the identity of this foreign government.

affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. S*ee Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

Courts review agency decisions to deny FOIA requests under the *de novo* standard of review. 5 U.S.C. § 552(a)(4)(B). "Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) (citing *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir.1994)). "To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information and that any withholding of materials was authorized within a

5

statutory exemption.'" *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (citing *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011)).

In this case, Plaintiff is not challenging whether the FBI conducted a good-faith records search, consequently the only matter at issue is whether the Defendants' withholding of certain documents is authorized within a FOIA exemption.

### B. Discussion

"The basic goal of the Freedom of Information Act is to open up agencies to public scrutiny." *Norwood v. F.A.A.*, 993 F.2d 570, 573 (6th Cir. 1993). Therefore, FOIA exemptions should be "narrowly construed." *Id.* Further, the government bears the burden of establishing the applicability of an exemption. *Id.*

Here, the FBI contends that the two documents at issue are covered under FOIA Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "This provision protects documents that a private party could not discover in litigation with the agency." *Rugiero*, 257 F.3d at 549. This includes documents protected by "the recognized evidentiary privileges, such as the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege." *Id.* at 550.

In order to qualify under Exemption 5, "a document must thus satisfy two conditions: [1] its source must be a Government agency, and [2] it must fall within

6

the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  The Court will discuss each factor in turn.

**1. Inter-Agency or Intra-Agency Communication**

"[T]he first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency[6].'" *Id*. at 9 (citing 5 U.S.C. § 552(b)(5)).  As a threshold matter, the Court notes that Plaintiff did not raise this issue in his responsive pleading.  The Court could construe this as a waiver of the argument.  But regardless, when analyzing the applicability of Exemption 5 on the merits, the Court finds that the documents were intra-agency communications based on the common interest doctrine.

A communication need not be solely between federal agencies to constitute an intra-agency communication.  For example, communications with outside advisors can constitute an intra or inter-agency communication where the outside advisor plays "essentially the same part in an agency's process of deliberation" as the agency's employees might have.  *Id*. at 10.  Similarly, communications between an agency and an outside party may constitute intra-agency communications under the

---

[6] 5 U.S.C. § 552(f)(1) defines "agency" to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]"

common interest doctrine.[7]  *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 280 (4th Cir. 2010).  This doctrine applies where the agency's interests and those of its outside litigation partner converge since by "cooperating with the agency in pursuit of the agency's own litigation aims, the litigation partner in a limited sense becomes a part of the enterprise that the agency is carrying out."  *Id.*

In contrast, communications with adversarial outside parties would not qualify as intra-agency communications.  *See Center for Int'l Environmental Law v. Office of the U.S. Trade Representative,* 237 F. Supp. 2d 17, 26 (D.D.C. 2002) (finding that documents exchanged in the midst of trade negotiations between the United States and Chile did not constitute intra-agency communications because Chile was in an adversarial position during bilateral trade negotiations.).

Here, both documents were requests for assistance from the OIA to foreign governments in furtherance of the government's investigation of possible national security crimes.  The foreign governments therefore had a common interest in the investigation of the potential crimes and were not in an adversarial position vis-à-vis the United States government.  Under these circumstances, the Court finds that the common interest doctrine applies and that the communications between the OIA and the foreign governments constituted "intra-government" communications.

---

[7] Generally, the common interest doctrine applies when "two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest."  *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004)

8

### 2. Falling within the Ambit of a Recognized Privilege

Defendants argue that the two documents at issue fall within two recognized privileges, the attorney work-product privilege, and the deliberate process privilege. Plaintiff does not challenge the applicability of the privileges, but rather argues that the government can release redacted versions of the documents containing only the facts within the documents.[8]

### a. Attorney Work-Product Privilege

In *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court first recognized the attorney work product privilege. It stated:

> "[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . the "Work Product of the lawyer."

*Id.* at 511 (internal citation omitted). In construing the work-product privilege, the Sixth Circuit has treated factual summaries and deliberative materials as intertwined and equally protected as attorney work-product. *See Norwood*, 993 F.2d at 576 (citing approvingly *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987)) ("The work-product privilege simply does not distinguish

---

[8] Because, as explained below, the attorney work-product privilege and the deliberative process privilege apply, the Court need not address the Defendants' argument under the MLAT with Austria.

9

between factual and deliberative material . . . . [We] find that if the work-product privilege protects the documents at issue here, Exemption (b)(5) protects them as well, regardless of their status as 'factual' or 'deliberative.'").

Here, both documents were drafted by attorneys and are described as containing the DOJ's legal theories, compiled factual summaries, interpretation of evidence, and the statutory basis of the investigation into Plaintiff's actions. Because all of this constitutes attorney work-product, the Court cannot satisfy Plaintiff's request to redact only the deliberative materials and require production of the remaining factual statements in the documents. As *Norwood* makes clear, the work-product privilege covers both the factual summaries as well as the deliberative processes contained within the documents.

### b. *Deliberative Process Privilege*

In addition to work-product, the documents also fall under the deliberative process privilege. "To come within this exception on the basis of the deliberative process privilege, a document must be both 'predecisional,' meaning it is 'received by the decisionmaker on the subject of the decision prior to the time the decision is made,' and 'deliberative,' the result of a consultative process." *Rugiero*, 257 F. 3d at 550 (quoting *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 940 (6th Cir. 1988)).

"Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of an agency, the key issue in applying this

exception is whether disclosure of the materials would 'expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (quoting *Shell*, 843 F.2d at 940).

The two documents at issue here are clearly pre-decisional as the government attorneys compiled them during their investigation of Plaintiff's actions. Further, they should be considered deliberative because they contain legal theories, and the lawyers' interpretation of the accrued evidence. Furthermore, the factual background is not segregable from the deliberative process content as both documents are short 8-page documents. Moreover, the release of these sensitive documents compiled during the course of an open investigation would "expose" the agency's decision-making process, ultimately hampering its ability to perform its functions. For these reasons, the Court holds that the documents are protected from disclosure under the deliberative process privilege.

## III. CONCLUSION

Because, as explained above, the two documents sought by Plaintiff under FOIA are protected under both the work-product privilege and the deliberative process privilege, Defendants' motion for summary judgment **IS GRANTED**.

**SO ORDERED.**

Dated: January 27, 2016   s/Terrence G. Berg
                          TERRENCE G. BERG
                          UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on January 27, 2016, using the CM/ECF system, which will send notification to all parties.

                          s/A. Chubb
                          Case Manager